**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. G. MARISA KELLY-PIMENTEL,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS and DR. LAUREL HARRY,<br><br>Defendants. | ) | No.: 2:24-cv-01475<br><br>Judge Robert J. Colville |

**MEMORANDUM OPINION OF COURT**

Robert J. Colville, United States District Judge

Before the Court is the Motion for Summary Judgment filed by Defendants, the Pennsylvania Department of Corrections ("DOC") and Dr. Laurel Harry in response to the employment claims stated by Plaintiff, Dr. G. Marisa Kelly-Pimentel. ECF No. 28. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. The Motion has been fully briefed and is ripe for disposition. For the reasons discussed herein, Defendants' Motion for Summary Judgment is granted in part, and denied in part.

## I. Background

This matter was initiated upon the filing of Plaintiff's Complaint on October 24, 2024. ECF No. 1. Thereafter, on November 14, 2024, upon Plaintiff's unopposed motion (ECF No. 5), this matter was consolidated with *Kelly-Pimentel v. Pennsylvania Department of Corrections*, No. 19-cv-481, a separate matter before this Court in which Plaintiff has brought claims against Defendants for alleged employment discrimination. *See* ECF No. 6. Following consolidation,

Defendants answered Plaintiff's Complaint, and the case proceeded to discovery. ECF Nos. 13-14.

On January 20, 2026, Defendants filed a Motion for Summary Judgment (ECF No. 28), along with an accompanying brief in support (ECF No. 29) and, as required by the Local Rules of this Court, a Concise Statement of Material Facts (ECF No. 30). On March 20, 2026, Plaintiff filed her response to Defendants' Concise Statement of Material Facts (ECF No. 34), her own Concise Statement of Additional Facts (ECF No. 35), and her opposition brief (ECF No. 36). Defendants filed their response to Plaintiff's Additional Facts on May 4, 2026. ECF No. 38.

Plaintiff's Complaint brings claims related to an allegedly adverse employment action taken against her by Defendants, which she contends was driven by discriminatory or retaliatory animus. ECF No. 1. Plaintiff is African-American and was 67 years old at the time of the events which give rise to this matter. Compl. ¶¶ 12-13. She alleges that she was employed by Defendant Department of Corrections from 1998 through February 2024, most recently as a teacher under the Department's Bureau of Correction Education at SCI-Greene. *Id.* ¶¶ 14-15. Plaintiff holds Ph.D., Master's, and Bachelor's degrees in Education from the University of Pittsburgh. *Id.* ¶ 17. She alleges that Defendant Department of Corrections previously failed to promote her in favor of less qualified White applicants on several occasions—first in 2014, and later in two separate instances in 2016. *Id.* ¶¶ 20, 21, 23, 25. Plaintiff filed two previous federal court complaints regarding these previous instances of alleged discrimination. *Id.* ¶¶ 22, 27. She also filed a charge with the EEOC and the PHRC in August 2023 after Defendant DOC filled a job opening without a competitive search, allegedly to deter Plaintiff's candidacy. *Id.* ¶¶ 39-40.

Plaintiff's instant claims arise from an alleged 2023 failure to promote. *See generally id.* ¶¶ 41-55. She contends that she applied for the position of Eastern Region Liaison, for which she

was qualified. *Id.* ¶¶ 41-42. However, after two rounds of interviews, Plaintiff was not selected for the position. *Id.* ¶¶ 51-53. The candidate selected for the position was an African-American woman. ECF No. 30 ¶ 58. Plaintiff contends that the selected candidate was less qualified than Plaintiff, but that the selected candidate was nonetheless chosen because she is younger and, unlike Plaintiff, had not raised previous complaints against Defendants. Compl. ¶ 54. Plaintiff resigned from her position in February 2024 due to "the repeated denials of deserved promotions based on race discrimination and/or retaliation as well as her employer's failure to address the prior discrimination and retaliation." *Id.* ¶ 61. Plaintiff contends that her resignation was forced and that she was therefore "constructively discharged" from her position. *Id.* ¶ 63.

Based on these facts, Plaintiff asserts the following claims pursuant to 42 U.S.C § 1981: (i) retaliation (failure to promote); (ii) retaliation (constructive discharge); (iii) retaliation (hostile work environment); (iv) race discrimination (failure to promote); (v) race discrimination (constructive discharge); and (vi) race discrimination (hostile work environment). Compl., Counts I-VI. Plaintiff asserts these same six claims pursuant to Title VII. *Id.*, Counts VII-XII. Finally, Plaintiff asserts a claim for age discrimination in violation of the Age Discrimination in Employment Act (29 U.S.C. § 621). *Id.*, Count XIII.

## II. Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light

most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

"The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact." *Bavone v. Primal Vantage Co., Inc.*, No. 2:21cv1260, 2024 WL 756815, at *1 (W.D. Pa. Feb. 21, 2024). When the moving party carries their burden, the summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further:

> A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id*. If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

*Mahaven v. Pulaski Twp.*, 139 F. Supp. 2d 663, 664–65 (W.D. Pa. 2001), *aff'd*, 45 F. App'x 155 (3d Cir. 2002); *see also Bavone*, 2024 WL 756815, at *1 ("Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.").

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

## III. Discussion

At the outset, the Court notes that Counts I through XII of Plaintiff's Complaint raise claims under both 42 U.S.C. § 1981 and Title VII for failure to promote, constructive discharge, and hostile work environment. Plaintiff asserts each claim under two theories: racial discrimination and retaliation. Next, Count XIII of Plaintiff's Complaint asserts a claim for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Defendants argue that Plaintiff's claims for damages under Section 1981 are barred by Eleventh Amendment state sovereign immunity. Defendants further contend that the factual record established through discovery does not support recovery for race discrimination or retaliation under Title VII. Finally, Defendants argue that they are not susceptible to suit under the ADEA due to state sovereign immunity and Defendant Harry's lack of personal involvement in the events giving rise to Plaintiff's claims. These arguments are addressed in turn.

### A. Section 1981

Plaintiff's Complaint, in Counts I through VI, brings claims pursuant to 42 U.S.C. § 1981. Section 1981 prohibits race discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981. Accordingly, the provision has been employed to vindicate certain instances of race discrimination, including discriminatory interference with one's at-will employment. *See Suero v. Motorworld Auto. Grp., Inc.*, No. 3:16-cv-686, 2017 WL 413005, at *7 (M.D. Pa. Jan. 31, 2017). However, Defendants contend that they are entitled to summary judgment on these

claims because "the Eleventh Amendment precludes Section 1981 claims against the Commonwealth, its agencies and state officials in their official capacities." Br. in Supp. at 16. Plaintiff does not respond, and indeed, her brief opposing summary judgment makes no reference to her Section 1981 claims at all.

The Court agrees with Defendants. There is "no implied private right of action [] against state actors under 42 U.S.C. § 1981." *McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). Rather, "the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units" exists in 42 U.S.C. § 1983. *Id.* at 121 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)); *see also Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (M.D. Pa. 1995) (explaining that "the states' immunity has not been abrogated for actions brought under §§ 1981, 1985, and 1986"). Accordingly, a claim brought pursuant to Section 1981 against a state actor "is without any viable legal basis." *Ford v. Se. Pennsylvania Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010).

It is undisputed that Defendant DOC "is a cabinet level administrative department within the government of the Commonwealth of Pennsylvania." ECF No. 30 ¶ 5; ECF No. 34 ¶ 5. Therefore, on the factual record before the Court, Plaintiff does not have a right of action under Section 1981 against Defendant DOC. Plaintiff's claims at Counts I-VI against DOC under Section 1981 therefore must fail.

To the extent that Plaintiff instead intended to assert these claims against Defendant Harry, summary judgment for Defendant is still warranted. It is undisputed that Defendant "Dr. Laurel Harry's involvement is limited to her being the Secretary of the Department of Corrections." ECF No. 30 ¶ 68; ECF No. 34 ¶ 68. Claims seeking to impose personal liability pursuant to Section 1981 must be predicated upon allegations of personal involvement by the individual defendant.

*See Douglas v. Nesbit*, No. 1:16-cv-1836, 2017 WL 1021680, at *6 (M.D. Pa. Mar. 16, 2017). Given this undisputed factual record, there are no allegations of Defendant Harry's personal involvement that could support her individual Section 1981 liability.

Therefore, as to Counts I through VI, Defendants' Motion for Summary Judgment is granted.

**B. Title VII**

Counts VII through XII of Plaintiff's Complaint are brought under Title VII. Courts use the *McDonnell Douglas* framework prescribed by the Supreme Court to determine whether a plaintiff has established a prima facie case of Title VII employment discrimination. *Boykins v. SEPTA*, 722 F. App'x 148, 152 (3d Cir. 2018). To establish their prima facie case under Title VII, the plaintiff must demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he was either not hired or was fired from that position; and (4) nonmembers of the protected class were treated more favorably." *Id.* (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)). Once the plaintiff establishes their prima facie case, the burden shifts to the defendant employer to offer "a legitimate, non-discriminatory reason for the adverse employment decision." *Id.* If the defendant can offer such a non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretextual and that discrimination was the actual reason for the adverse action. *Id.*

**1. Failure to Promote**

**a. Race Discrimination**

Count X of Plaintiff's Complaint alleges that, in failing to promote her following her 2023 application, Defendants racially discriminated against Plaintiff in violation of Title VII. Defendants argue that Plaintiff has failed to establish her prima facie race discrimination case

because the at-issue position was ultimately filled by another candidate who, like Plaintiff, is an African-American woman. Br. in Supp. at 6. Accordingly, they contend that Plaintiff cannot demonstrate that "nonmembers of the protected class were treated more favorably." *See Boykins*, 722 F. App'x at 152.

Indeed, Defendants' Concise Statement of Material Facts explains that "[a] collective decision was made[], and approved by DOC Bureau of Human resources, to hire Taneisha Spall, an African American female" for the position.[1] ECF No. 30 ¶ 58. If the position sought by Plaintiff was ultimately filled by someone from her own protected class, rather than by a nonmember of that protected class, then Plaintiff plainly cannot establish that nonmembers of the protected class were treated more favorably than her. Therefore, her Title VII claim on this theory fails.

Plaintiff responds that "[t]he Third Circuit has repeatedly held that a plaintiff need not show that the successful candidate was outside the protected class to establish a prima facie case." Br. in Opp. at 18. In support, she cites *Pivirotto v. Innovative Systems, Inc.*, where, indeed, the Third Circuit recognized that it is "error. . .to require a plaintiff to prove that she was replaced by someone outside her class in order to make out a prima facie case." 191 F.3d 344, 355 (3d Cir. 1999).

However, *Pivirotto* can be distinguished. In that case, the Third Circuit explained that a *discharged* employee could still maintain a prima facie Title VII claim despite her eventual replacement being of the same protected class. The *Pivirotto* Court (in considering sex

[1] The Court notes that, in Plaintiff's response to Defendants' Concise Statement of Material Facts, she disputes Paragraph 58 in part. ECF No. 34 ¶ 58. However, Plaintiff's disputes relate only to the question of which officers of DOC were ultimately responsible for the hiring decision. She "does not dispute that the DOC hired Ms. Spall who is an African American female." *Id.* Because Plaintiff's claims are not asserted against any of these DOC officers in their individual capacity, it is not material which officer was ultimately responsible for the allegedly adverse action.

discrimination rather than race discrimination) explained that "even if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees." *Id.* at 353-54. The Third Circuit further recognized that an employer who had discriminatorily discharged an employee might, in anticipation of litigation, make a pretextual hiring decision when replacing that employee. *Id.* at 355. Therefore, the Third Circuit held that replacement by another member of the protected class "does not. . .foreclose the plaintiff from proving that the employer was motivated by her gender (or other protected characteristic) *when it discharged her*." *Id.* (emphasis added).

The considerations identified in *Pivirotto* do not apply with equal force in the failure to promote context. Plaintiff's claim at this count is predicated on the contention that she was not selected for promotion due to her race. Because Plaintiff does not dispute that the person selected for that position instead of Plaintiff is of the same race, Plaintiff's contention is unsupported. Summary Judgment on Count X is therefore awarded to Defendants.

**b. Retaliation**

Count VII of Plaintiff's Complaint asserts a claim for retaliatory failure to promote in violation of Title VII. Defendants contend that Plaintiff's claims fail because she cannot establish that the allegedly adverse employment action was taken due to Plaintiff's participation in protected employee activity. Br. in Supp. at 14-16.

"A plaintiff seeking to establish a prima facie case of retaliation under Title VII must show: (1) protected employee activity; (2) 'adverse action by the employer either after or contemporaneous with the employee's protected activity'; and (3) a causal connection between the protected activity and the adverse action." *Leftwich v. Sec'y United States Dep't of the Treasury*, 741 F. App'x 879, 882 (3d Cir. 2018) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193

(3d Cir. 2015)). When the plaintiff successfully meets their burden, defendant may offer a legitimate, non-retaliatory basis for its actions. *Id.* The burden then shifts back to the plaintiff to prove that the proffered reason is pretextual and that the actual basis for defendant's action was retaliation. *Id.* The inquiry, then, is whether the plaintiff "produced evidence from which a reasonable factfinder could conclude that her engagement in a protected activity was the likely reason for the adverse employment action at the prima facie first stage and that the Defendants' explanation (at stage two) was pretext (at stage three)." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017).

It is undisputed that, at the time of the at-issue failure to promote, a federal lawsuit was pending in which Plaintiff alleged race discrimination by Defendant DOC. *See* ECF No. 35 ¶¶ 9-15; ECF No. 38 ¶¶ 9-15. It is also undisputed that Plaintiff filed an August 2023 EEOC charge alleging race discrimination and retaliation, that that charge was pending at the time of Plaintiff's application for the at-issue promotion, and that those involved in the selection process were aware of the EEOC charge. ECF No. 35 ¶¶ 17, 25; ECF No. 38 ¶¶ 17, 25. This establishes the first element of the prima facie case. *See Daniels*, 776 F.3d at 193 (explaining that opposition to allegedly discriminatory practices is protected activity); *see also Gabriel v. DSM Biomedical, Inc.*, 187 F.4th 77, 83 (3d Cir. 2026) (plaintiff's filing of "EEOC charge [was] indeed protected activity").

Further, Plaintiff was not awarded the at-issue promotion. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Plaintiff was not promoted and therefore, the adverse action element of her prima face case is satisfied.

However, Defendants argue that Plaintiff cannot establish the third element of her prima facie case—that the adverse action was causally connected to Plaintiff's protected activity. Defendants contend that any alleged protected activity was too far removed temporally from the adverse action. Moreover, they argue that temporal proximity alone is not enough to support causation for this inquiry.

Though temporal proximity "is an obvious method by which a plaintiff can proffer circumstantial evidence" sufficient to satisfy the causation inquiry, there is no "exclusive way[] to show causation." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). Rather, courts are instructed to look at the offered evidence as a whole to determine whether it supports such an inference. *Id.* The Third Circuit elaborated:

> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

*Id.* at 178; *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (explaining that "unusually suggestive" temporal proximity can support causation, but that causation can be inferred from the evidence as a whole even when suggestive temporal proximity is not present).

Here, the evidence as a whole establishes that over the course of several years, Plaintiff sought promotions, and when she was not selected for them, she alleged discrimination via EEOC charges and federal lawsuits. One such federal lawsuit was pending at the time of Plaintiff's application for the promotion now at issue. *See* ECF No. 35 ¶ 15; ECF No. 38 ¶ 15. Additionally, one of Plaintiff's EEOC charges was made just weeks before her application for the at-issue

promotion. ECF No. 35 ¶ 17; ECF No. 38 ¶ 17. On this record, it would not be unreasonable for a jury to infer causation from temporal proximity alone.

The Court is not persuaded by Defendants' argument that consideration of Plaintiff's application could not have been affected by her EEOC charge because the opening to which she applied was posted before her EEOC charge was made, and because the position was filled more than two months after Plaintiff filed the charge. Br. in Supp. at 14-15. The relevant question here is whether Plaintiff's candidacy for the promotion was affected by her protected activity. When the job opening was posted is not relevant to that analysis. What is relevant is that Defendants were aware of Plaintiff's activity when considering her candidacy.

Causation is, arguably, further supported by the recurring nature of the discrimination allegations over the course of Plaintiff's employment relationship. Moreover, following Defendants' consideration of Plaintiff's promotion application, one of Defendant's officers described her as "litigious over the years." *See* ECF No. 37-7 at 37. Thus, there is evidence that would allow a jury to conclude that Plaintiff's past protected activity—her filing of legal complaints and EEOC charges—was the reason that Defendants elected not to promote her following her September 2023 application.

Therefore, Plaintiff has established each of the three elements of her prima facie Title VII retaliation case, and the burden shifts to Defendants. Defendants contend that they have provided a legitimate, nondiscriminatory reason for their failure to select Plaintiff for promotion. Br. in Supp. at 15. They argue that, though Plaintiff was qualified for the position, "[a]fter the second round of interviews, Spall was ranked first because of her knowledge and experience with relevant policies and guidelines, demonstrated drive and passion for education programs, her extensive work creating a support plan for SCI-Chester's education department and administration while a

staff assistant, and previous work experience at SCI-Chester and in the public school system." *Id.* at 9.

Plaintiff responds that this is a retroactive justification manufactured as a pretext. Br. in Opp. at 10-11. To demonstrate the pretext, she cites evidence in the record relating to her relevant credentials as compared to those of the selected candidate. Br. in Opp. at 12. Defendants do not contest that Plaintiff has accurately cited this evidence, but they disagree with Plaintiff's "characterization." *See* ECF No. 35 ¶ 106; ECF No. 38 ¶ 106. There is, then, a dispute as to whether the facts establish that Defendants' proffered justification for failing to promote Plaintiff is, in fact, a pretext. Thus, Defendants' summary judgment motion on this count is denied.

**2. Hostile Work Environment**

Plaintiff's Complaint, in Counts IX and XII, brings claims based upon Defendants' alleged creation of a hostile work environment, attributable to retaliation or race discrimination, and in alleged violation of Title VII. Defendants argue that this claim must be dismissed because Plaintiff has not, through discovery, identified evidence to support the existence of a hostile work environment. Br. in Supp. at 10-11.

"The following five elements must be established by a plaintiff bringing a hostile work environment claim pursuant to Title VII: (1) the plaintiff suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex or race in that position; and (5) there is a basis for vicarious liability." *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 444 (W.D. Pa. 2008). Whether hostility in a work environment is severe or pervasive requires a review of the "totality of the circumstances," and relevant considerations include frequency, severity,

whether the conduct interferes with the complainant's ability to perform their job, and "whether it is physically threatening or humiliating." *Felder v. Penn. Mfg. Indus., Inc.*, 182 F. Supp. 3d 203, 211 (E.D. Pa. 2016) (quoting *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013)).

Ultimately, in support for her claim of a hostile work environment, Plaintiff points to little more than Defendants' alleged failures to promote her. Br. in Opp. at 16-18. While the Court appreciates that Plaintiff was surely frustrated and disappointed that she was not promoted, this conduct is nowhere near the severe and pervasive hostility that supports the existence of a hostile work environment. The only other fact Plaintiff points to is that a supervisor "singled out [Plaintiff] and had her monitored." Br. in Opp. at 17. This alone does not reach the requisite severity; that a supervisor would seek visibility into the activity of a subordinate frankly strikes this Court as unremarkable.

Thus, as Plaintiff has not put forth facts to establish that Defendants' conduct was sufficiently severe or pervasive as to support the existence of a hostile work environment, her claims at Counts IX and XII fail. Defendants' Motion for Summary Judgment on these Counts is therefore granted.

### 3. Constructive Discharge

Counts VIII and XI of Plaintiff's Complaint assert claims for constructive discharge due to retaliation or race discrimination, and in alleged violation of Title VII. Plaintiff explains that, after not being selected for the at-issue promotion, she "had no choice but to resign her employment under the circumstances including, but not limited to, the repeated denials of deserved promotions based on race discrimination and/or retaliation, her employer's failure to address the prior discrimination and retaliation, and the painful realization that she would never receive equal opportunity in this Pennsylvania state agency." Compl. ¶¶ 167, 202. Defendants argue that

Plaintiff's claim that she was constructively discharged must fail because Plaintiff has failed to produce supporting evidence in discovery. Br. in Supp. at 12. Plaintiff responds that the facts she has established could allow a jury to conclude that she had been constructively discharged.

"To establish a constructive discharge, [plaintiff] must show that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Mandel*, 706 F.3d at 169 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)); *see also Peifer v. Bd. of Probation and Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (constructive discharge is assessed using an "objective standard"). It is not enough for the employee to show that they, subjectively, "viewed resignation as the wisest or best decision." *Lee v. City of Philadelphia*, No. 13-510, 2014 WL 736185, at *4 (E.D. Pa. Feb. 26, 2014) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)). Moreover, "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006). Relevant factors for a constructive discharge inquiry include "whether an employee was threatened with termination, demoted, had his pay reduced, was involuntarily transferred, had his job responsibilities altered, or was given unsatisfactory job evaluations." *Stucke v. City of Philadelphia*, 685 F. App'x 150, 155 (3d Cir. 2017).

In *Stucke*, the plaintiff employee was not subjected to any of the factors identified by the Third Circuit as relevant for identifying a constructive discharge. *Id.* Rather, he contended that he was constructively discharged when he resigned from a position that he had been promoted to on an interim basis. *Id.* at 154. The plaintiff eventually resigned from the interim role after being advised that he would not be permanently appointed. *Id.* at 152. On these facts, the district court

held that plaintiff's resignation was not a constructive discharge and granted summary judgment to the defendant. *Id.* at 154. The Third Circuit affirmed. *Id.*

Conversely, in *Aman*, the Third Circuit reversed the district court's holding that the plaintiff-employee had not established facts to support her constructive discharge. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 1084-85 (3d Cir. 1996). The plaintiff had established facts demonstrating a "general atmosphere of racial hostility" wherein white employees would openly disparage and insult black employees. *Id.* at 1078. Black employees were paid less than their white counterparts and were subjected to unfounded workplace complaints. *Id.* at 1078-79. On this record, a reasonable jury could conclude that resignation constituted constructive discharge. *Id.* at 1085.

It is undisputed that Plaintiff's employment with the Department of Corrections ended upon her February 2, 2024 resignation. *See* ECF No. 30 ¶ 64. Defendants contend that Plaintiff resigned "voluntarily." *See id.* Plaintiff disputes this characterization, arguing that it was a "forced resignation" in light of "the constant retaliation and discrimination of the last 10 years of her employment." ECF No. 34 ¶ 64.

The typical factors relevant to a finding of constructive discharge do not appear to be applicable here. For example, this Court is aware of no evidence to suggest that Plaintiff was ever threatened with termination or subjected to demotion, pay reduction, or a material change to her existing job responsibilities. *Cf. Stucke*, 685 F. App'x at 155. Moreover, Plaintiff was apparently not given unsatisfactory performance evaluations or subjected to unfounded workplace complaints, as her resignation letter highlights that she "received outstanding employee performance reviews and earned numerous accolades as well as recommendations." *See* ECF No. 31-20 at 1.

Therefore, Plaintiff resembles the plaintiff employee in *Stucke* who was not constructively discharged when he resigned upon concluding that he did not have a viable path to advance. *See* 685 F. App'x at 155. *Stucke*, however, can also be distinguished—there, the plaintiff was not able to be promoted because he lacked the requisite qualifications for the role he sought. *Id.* at 152. By contrast, the parties here agree that Plaintiff was qualified for the position to which she applied. Nonetheless, Plaintiff, in her resignation letter, Complaint, and statement of material facts, alleges none of the workplace harassment that the Third Circuit has counseled is indicative of constructive discharge.[2] Moreover, other district courts in this circuit have noted that a denial of promotion, even if discriminatory, is not enough alone to establish constructive discharge. *Lee*, 2014 WL 736185, at *5. "Rather, a denial of a promotion must be accompanied by other factors which, when viewed together, would cause a reasonable person to believe that the employment condition was so intolerable that he or she would have to resign." *Id.* (quoting *Hopson v. Dollar Bank*, 994 F. Supp. 332, 340 (W.D. Pa. 1997)). Therefore, Plaintiff's claim that she was constructively discharged has simply not been supported.

Because Plaintiff's resignation from her position was not a constructive discharge, on Counts VIII and XI of Plaintiff's Complaint, summary judgment is granted to Defendants.

**C. ADEA**

Count XIII of Plaintiff's Complaint alleges discrimination on the basis of age in violation of the ADEA, 29 U.S.C. § 621. Plaintiff indicates that this claim is asserted against Defendant Dr.

---

[2] Plaintiff's resignation letter (ECF No. 31-20) uses some language that could suggest conduct closer to that which the Third Circuit has looked for when identifying constructive discharge. For example, Plaintiff's letter refers to "the intentional defaming of [her] character" (ECF No. 31-20 at 3), but it does not provide any details of that defamation or even say who defamed her. Plaintiff contends that her resignation letter explains the "harassment" she experienced (ECF No. 34 ¶ 64), but the letter's content is actually addressed to Plaintiff's qualifications, her dedication to her job, and her feelings about the allegedly discriminatory and retaliatory failures to promote.

Laurel Harry. *See* Compl. at 24. Plaintiff apparently does not seek compensatory damages at this count, as her Complaint indicates that she "requests all prospective injunctive relief permitted under law including, but not limited to, reinstatement and other declaratory and injunctive relief, as well as any other damages permitted under law such as reasonable attorneys' fees." *Id.* ¶ 222.

Defendants contend that this claim is asserted only against Defendant Harry because arms of the Commonwealth are immune from claims brought pursuant to the ADEA. Br. in Supp. at 18. Indeed, the ADEA did not abrogate state sovereign immunity. *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Similarly, Plaintiff's Complaint purports to seek only "prospective injunctive relief" at this Count, presumably because "[t]he Third Circuit has made clear that the ADEA does not permit individual liability." *McIlmail v. Pennsylvania*, No. 17-cv-2991, 2018 WL 1071927, at *3 (E.D. Pa. Feb. 27, 2018).

Plaintiff responds that her claim is one for prospective injunctive relief, and that therefore the exception to state sovereign immunity under *Ex parte Young* is available. Br. in Opp. at 19. Plaintiff then contends that she has provided the factual support needed to state a prima facie case of age discrimination under the ADEA.

Whether or not Plaintiff has established adequate factual support for a prima facie case under the ADEA, the claim cannot survive, as, under the Eleventh Amendment, there is no remedy available to Plaintiff against these Defendants. Plaintiff's Complaint purports to request only "prospective injunctive relief," but the so-called prospective relief sought "includ[es]. . .reinstatement." Compl. ¶ 222. Aside from reinstatement, the Complaint does not list any other form of injunctive relief that may be warranted.

The *Ex parte Young* exception to state sovereign immunity does not allow for retroactive relief designed to remedy past wrongs. *McIlmail*, 2018 WL 1071927, at *2. In evaluating whether

the relief sought is prospective or retroactive, "the label" placed on the demanded remedy "is of no importance." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996). Rather, the reviewing court "must look to the substance rather than the form of the relief requested to determine whether [the] claims are barred by the Eleventh Amendment." *Id.* Therefore, when reinstatement is sought to apparently correct an allegedly unlawful discharge by a state actor, the remedy is not available. *McIlmail*, 2018 WL 1071927, at *3; *see also DeHope v. New Jersey Dep't of L. & Pub. Safety*, No. 11-3408, 2011 WL 6176220 (D.N.J. Dec. 12, 2011) (reinstatement was not a prospective remedy available to plaintiff under ADEA following termination from employment at state agency).

Though Plaintiff contends that she seeks only prospective relief which should be available under the *Ex parte Young* exception, the Court finds that Plaintiff's claim does not seek to prospectively enjoin an ongoing violation. Rather, in substance, her ADEA claim seeks only to remedy injuries resulting from past harms. That remedy is unavailable against these Defendants, and Plaintiff's claim therefore fails. Summary judgment on Count XIII is awarded to Defendants.

**IV. Conclusion**

For the reasons discussed herein, Defendants' Motion for Summary Judgment (ECF No. 28) is granted in part and denied in part. Because a right of action under Section 1981 is unavailable, summary judgment is granted to Defendants on Counts I through VI of Plaintiff's Complaint. Moreover, as Plaintiff has failed to establish facts to support her claims at Counts VIII through XII, summary judgment on those counts is granted to Defendants. Summary judgment is also granted to Defendants on Plaintiff's claim at Count XIII, as the remedy that Plaintiff seeks is barred by state sovereign immunity. As to Plaintiff's claim at County VII, Defendants' Motion

for Summary Judgment is denied due to a material dispute as to whether Defendants' proffered reason for their adverse employment action was pretextual.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 28, 2026

cc: All counsel of record